Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good ground to receive further evidence or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence AFFIRMS in part and MODIFIES in part the Opinion and Award of the Deputy Commissioner as follows:
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing before the Deputy Commissioner as
 STIPULATIONS
1. As of August, 1994, the time period giving rise to this claim, the parties were subject to and bound by the North Carolina Workers Compensation Act.
2. At all relevant times, the employment relationship existed between plaintiff-employee and defendant-employer.
3. The defendant-employer was insured and Zurich-American Insurance Company was the compensation carrier on the risk.
4. Defendants have accepted liability for plaintiffs bilateral flexor tendonitis as a compensable claim, and plaintiff has received all benefits she would be entitled to receive for temporary wage loss prior to December 27, 1994.
5. The issues before the Commission are whether plaintiff is entitled to receive temporary wage loss benefits beginning January 29, 1995, and whether plaintiff is entitled to receive any permanent partial disability benefits.
********
Based upon the competent evidence of record, the Full Commission modifies and adopts the findings of fact of the Deputy Commissioner and finds as follows:
 FINDINGS OF FACT
1. Plaintiff is a female who was born on August 12, 1965. She received a B.S. degree in Economics from Fayetteville State University in May, 1994.
2. Plaintiff was first seen by Dr. Leonard Nelson, Jr. of Raleigh Orthopedic Clinic on September 12, 1994, for evaluation of her complaints of bilateral wrist pain and swelling. Dr. Nelson found no obvious swelling. Plaintiff had pain with flexion of the wrist bilaterally, and he assessed her with bilateral flexor tenosynovitis, and took her out of work, initially for 2 weeks.
3. On January 25, 1995, Dr. Nelson released plaintiff to return to work 4 hours per day for two weeks and then to go to 8 hours per day. He also gave her bilateral wrist splints.
4. On or about January 29, 1995, plaintiff returned to work examining and sorting brushes, which each weighed only ounces. In a normal eight hour period, 1500 to 2000 brushes would be sorted. Although she was only released to work 4 hours, she worked an 8 hour shift.
5. The next day, January 30, 1995, plaintiff was moved to a different department, where she put powder into a machine to grind it up. This job did not involve any repetitive motion.
6. On February 3, 1995, plaintiff returned to Dr. Nelson with complaints of "severe unrelenting pain in her upper extremities. On examination, Dr. Nelson found none of the swelling of which plaintiff complained, and no true pathologic condition. Her exam being normal, Dr. Nelson again advised her she should return to work, and also suggested she try to get in better shape.
7. Plaintiff worked on February 7, 8 and 9, 1995, in an Operator II position, which involved lighter duty than plaintiffs regular job. This job involved picking up brushes and putting a sleeve on them, and then laying them in a tray. Plaintiff could work at her own pace.
8. Plaintiff did not return to work with defendant after February 9, 1995 and did not call in or provide any medical excuses. She was terminated on February 15, 1995, for her failure to report to work on 2 consecutive days.
9. On March 6, 1995, plaintiff returned to Dr. Nelson with complaints that her wrists were swollen and that she had severe pain. On examination, Dr. Nelson found good flexion and extension of the wrist, good pronation and supination, and no spasm or list, and a negative Tinels test. Her exam was again normal, and Dr. Nelson was of the opinion she was at maximum medical improvement, with no permanent disability. He believed she could return to her regular job. However, he thought it would be best if she engaged in a job that did not require any repetitive movements to her wrist.
10. Dr. Donald Bynum examined plaintiff on September 20, 1995. His exam showed slight atrophy of the flexor muscles on the right forearm, and some tenderness in the forearm, but no other abnormalities. There was no discoloration of the skin, no swelling, no congestion, and she had full range of motion of all joints, with no indication of carpal tunnel syndrome. Her x-rays were normal and a three phase bone scan showed no abnormality. Dr. Bynum did not make a firm diagnosis, but his impression was chronic myalgia, tendonosis or tendinitis type symptoms. He recommended a steroid injection of cortisone and use of wrist splints. He believes plaintiff should avoid repetitive motion activities.
11. When he last saw plaintiff on October 18, 1995, Dr. Bynum was of the opinion she was at maximum medical improvement, with no permanent impairment since there was no real anatomic damage. He did not think she would benefit from further treatment.
12. The employment offered by defendants following plaintiffs release to return to work was within the restrictions set out by Dr. Nelson. The greater weight of the credible evidence fails to support plaintiffs claim that the work caused pain and swelling in her upper extremities. Her refusal to return to the work made available by defendant after being released by Dr. Nelson on January 25, 1995, was not justified.
13. More weight is accorded to the testimony and assessments of Dr. Nelson, and Dr. Bynum, who are both orthopedic specialists, than to the testimony and assessment of Dr. Juberg, a family practice physician. Dr. Juberg acknowledged that he would defer to Dr. Nelsons opinion with regard to plaintiffs ability to return to work and any permanent impairment.
14. Plaintiff has presented no evidence of any attempts to return to gainful employment since her refusal to return to work with defendant and her subsequent termination.
********
Based upon the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiffs refusal to return to suitable work after January 25, 1995 was not justified and is the basis for the suspension of benefits pursuant to N.C.G.S. 97-32.
2. Plaintiff reached maximum medical improvement on October 18, 1995. The evidence fails to establish that plaintiff is entitled to any compensation for permanent partial impairment pursuant to N.C.G.S. 97-31.
3. Plaintiff has been physically capable of earning the same or greater wages since February 9, 1995.
********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
 ORDER
1. Under the law, plaintiffs claim for additional benefits under the Workers' Compensation Act, must be and is hereby DENIED.
2. Each side shall pay its own costs.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/_________________ J. HOWARD BUNN, JR. CHAIRMAN
S/_______________ LAURA K. MAVRETIC COMMISSIONER
BSB:md